NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 180097-U

NO. 4-18-0097

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 28, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| KATRINA L. GILES, | ) | No. 11CF1117 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | James R. Coryell, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Presiding Justice Steigmann and Justice Harris concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The appellate court reversed and remanded, finding the postconviction petition presented the gist of a constitutional claim, *i.e.*, ineffective assistance of counsel, and should have progressed to second-stage postconviction proceedings.

¶ 2     Defendant Katrina Giles *pro se* filed a postconviction petition alleging ineffective assistance of counsel and various due process claims. The trial court summarily dismissed the petition, finding it failed to state the gist of a cause of action.

¶ 3     On appeal, defendant presents two arguments: (1) the trial court erred in summarily dismissing the petition because it presented a nonfrivolous, meritorious ineffective assistance of counsel claim based on a *per se* conflict of interest and (2) her 50-year sentence violates the Illinois and United States constitutions. We agree with defendant's first argument and remand this matter to the trial court for further proceedings.

¶ 4                                        I. BACKGROUND

¶ 5        In August 2011, the State charged defendant with multiple counts, including first degree murder while armed with a firearm (720 ILCS 5/9-1(a)(1) (West 2010), 730 ILCS 5/5-8-1(a)(1), (d)(i) (West 2010)). Attorney Jay Scott, then First Assistant State's Attorney, was a signatory to those charges. Attorney Jonathan P. Erickson entered his appearance on defendant's behalf on October 5, 2011, and undertook defending her against the charges. On October 27, 2011, Scott appeared on behalf of the State in the preliminary hearing, and Scott remained involved in the prosecution through 2011.

¶ 6        Erickson thereafter began representing Scott in a divorce matter, filing a petition for dissolution of marriage on Scott's behalf in February 2012. During 2012, Scott became Macon County State's Attorney and, consequently, remained attached to the prosecution of defendant's criminal matter as the state's attorney with supervisory power over all his assistants. Until he withdrew as defendant's defense counsel in September 2013, Erickson represented defendant in her murder case while simultaneously representing Scott in his divorce case. At some point between February 2012 and September 2013, defendant signed the following, undated, unverified "Waiver of Conflict":

> "I, Katrina Giles, acknowledge that my attorney, Jonathan P.
> Erickson, is representing First Assistant States Attorney Jay Scott
> in a pending divorce case in Macon County. I waive any potential
> conflict of interest that may exist due to Mr. Erickson's
> representation of Mr. Scott and I."

¶ 7        The existing record is unclear about State's Attorney Scott's level of involvement in prosecuting defendant for murder from February 2012 until April 2014, when he resumed "primary responsibility for preparing and trying the case." But we do know Erickson talked with

Scott about defendant's prosecution while representing both defendant and Scott; specifically, Erickson complained to Scott about a late disclosure of evidence by the State and a pending plea offer from the assistant state's attorney.

¶ 8        The record is likewise unclear on whether the trial court knew about Erickson's dual representation or defendant's "waiver" before defendant's new counsel filed a motion to disqualify counsel in July 2014 or before the September 2014 hearing on the motion. The court eventually denied defendant's motion to disqualify State's Attorney Scott from the case, finding no conflict of interest existed.

¶ 9        On November 2, 2015, defendant entered a negotiated plea wherein she pleaded guilty to first degree murder in exchange for the State dropping the remaining charges. The plea deal required defendant to serve 35 years for the offense, with a 15-year firearm enhancement, for a total of 50 years (served at 100%) in the Illinois Department of Corrections followed by 3 years' mandatory supervised release. Defendant never filed a postplea motion or a direct appeal.

¶ 10        In October 2017, defendant filed a *pro se* postconviction petition alleging ineffective assistance of counsel and various due process violations. Concerning the former, she argued her "[Sixth] Amendment Right was violated" because her "lawyer John Erickson was representing her and her Prosecutor, as her Prosecutor's divorce lawyer during the time Mr. Erickson was fighting her case." Defendant alleged this conflict of interest prevented Erickson from effectively reaching a better plea agreement with the State and reducing to writing a prior, more favorable plea offer wherein she would have served 20 or 25 years rather than 50. She acknowledged signing a "Waiver of Conflict," but she maintained she did not understand what she was doing. Finally, defendant attached to her petition three exhibits showing she tried but was unable to secure evidence for her constitutional claims.

¶ 11    In December 2017, the trial court summarily dismissed the petition with a written order. The court concluded, "[t]he Pro-se Petition fails to state the gist of a course [sic] of action and is therefore dismissed."

¶ 12    This appeal followed.

¶ 13                            II. ANALYSIS

¶ 14    Defendant argues the trial court erred in summarily dismissing her postconviction petition because she "me[t] the requirement that she merely state the gist of a claim for relief." We agree.

¶ 15    Section 122-2.1(a)(2) of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-2.1(a)(2) (West 2016)) outlines first-stage postconviction proceedings and requires a trial court to examine a petition within 90 days of the filing and docketing of a petition without input from either party, *i.e.*, the defendant or the State. See *People v. Brown*, 236 Ill. 2d 175, 184, 923 N.E.2d 748, 754 (2010). If, after examining the petition, "the court determines [it] is frivolous or is patently without merit, it shall dismiss the petition in a written order." 725 ILCS 5/122-2.1(a)(2) (West 2016). For this summary dismissal, our review is *de novo*. *People v. Coleman*, 183 Ill. 2d 366, 388-89, 701 N.E.2d 1063, 1075 (1998).

¶ 16    During first-stage review, the trial court must take as true and even liberally construe the petition's allegations. *Brown*, 236 Ill. 2d at 184. Indeed, to survive summary dismissal, the petition need only clear the " 'low threshold' " of "present[ing] the gist of a constitutional claim." *Brown*, 236 Ill. 2d at 184 (quoting *People v. Jones*, 211 Ill. 2d 140, 144, 809 N.E.2d 1233, 1236 (2004)). By contrast, if a petition fails to meet this low, "gist" threshold, then the petition must be summarily dismissed as frivolous and patently without merit. See

*People v. Edwards*, 197 Ill. 2d 239, 244, 757 N.E.2d 442, 445 (2001); 725 ILCS 5/122-2.1(a)(2) (West 2016).

¶ 17    "Gist" is an imprecise, inherently subjective term incapable of much elaboration, yet nevertheless has long been tied to the above summary dismissal standard. Perhaps for that reason, the supreme court has found the need, from time to time, to expand upon what "frivolous or patently without merit" means. One such instance is *People v. Hodges*, 234 Ill. 2d 1, 912 N.E.2d 1204 (2009). For purposes of summary dismissal under section 122-2.1(a)(2) of the Act, "frivolous or patently without merit" means "the petition has no arguable basis either in law or in fact." *Hodges*, 234 Ill. 2d at 16. And "[a] petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation." *Hodges*, 234 Ill. 2d at 16. By way of examples, "an indisputably meritless legal theory is one *** completely contradicted by the record," and a factual allegation is fanciful if it is "fantastic or delusional." *Hodges*, 234 Ill. 2d at 16-17. With these helpful definitions in mind, we turn our attention to whether the trial court properly dismissed defendant's postconviction petition for failure to present the gist of a constitutional claim, *i.e.*, summarily dismissing it as frivolous or patently without merit.

¶ 18    Defendant's postconviction petition alleged a sixth amendment violation. She argued her trial counsel, Jonathan P. Erickson, proved ineffective by simultaneously representing her in her murder case and the state's attorney in his divorce case—a *per se* conflict of interest because Erickson (as defense counsel) had a contemporaneous association with defendant's defense and the prosecution. See *People v. Hernandez*, 231 Ill. 2d 134, 143, 896 N.E.2d 297, 303 (2008). The petition alleged "[p]etitioner's lawyer John Erickson was representing her and her [p]rosecutor, as her [p]rosecutor's divorce lawyer during the time Mr. Erickson was fighting her

case." Specifically, the petition maintained that during plea negotiations, "[defendant's] lawyer was going back and forth between Jay Scott [(the state's attorney involved in her prosecution)] and herself. This while Jay Scott was being represented by [defendant's] lawyer in his divorce case and her in her murder case still may constitute conflict of interest." On their face, taking them as true, these factual allegations are not fanciful—they are neither fantastic nor delusional. See *Hodges*, 234 Ill. 2d at 17. To be sure, we see the record supports defendant's allegations.

¶ 19    The record confirms Erickson simultaneously represented defendant in her murder case and Jay Scott (the First Assistant State's Attorney and then State's Attorney) in his divorce case from February 2012 through September 2013, when he was substituted out of defendant's case by the firm of Brown, Hay & Stephens. The record also reveals an undated written waiver of this conflict, which defendant contends she understood to mean Scott would be out of the case. What is more, Erickson testified that during this time period he approached Jay Scott, who was by that time the state's attorney as well as his client, and tried negotiating a plea for defendant. He explained:

>    "We [(Erickson and his father who was a partner in his firm)] tried
>    to get Mr. Scott to agree to 20 years and he wouldn't. In fact, he
>    was hesitant to go with the 25. And we kind of got into a heated
>    exchange. But in the end he agreed to the 25."

Erickson further testified when defendant refused to accept the offer, "[t]hat's why Mr. Fultz got in the case. 'Cause I set for disposition. And I said, we're not gonna do any better than the 25. And she absolutely wouldn't take it." He also testified Scott informed him that if he sought to bar the use of the new evidence, or if a new attorney entered their appearance on behalf of defendant, the offer of 25 years was rescinded. Erickson acknowledged he had been negotiating with the

- 6 -

assistant state's attorney handling the case because Scott, who was his client, was not involved. But when the State tendered new evidence on the eve of trial, he approached Scott "because in the end he has the last say in terms of what sort of offer could be extended." Taking the petition's factual allegations as true and seeing they are not completely contradicted by the record, we cannot say they are fanciful, nor do they plead an "indisputably meritless legal theory." *Hodges*, 234 Ill. 2d at 16.

¶ 20        In our view, the record as a whole not only supported defendant's ineffective assistance of counsel allegation, but Erickson's testimony, specifically, raised several questions: (1) When he decided to approach Scott about the new evidence and the offer, why was his father's presence necessary unless he recognized or perceived a problem with talking to one client about another client whose interests were diametrically opposed? (2) When he conveyed the offer to defendant, he appears to have testified he went ahead and set the matter for disposition even though she was saying she did not want to take it, and he later had to accept the fact she was not going to accept the offer—why take that approach? (3) Was having Scott discontinue his actual handling of defendant's case sufficient in Erickson's mind to avoid a conflict? (4) What exactly were the circumstances surrounding Erickson's withdrawal and Fultz's substitution as counsel, especially in light of Erickson's representation to defendant that if new counsel entered her case, the offer for 25 years was rescinded? (5) By his testimony, Erickson appeared to say defendant's refusal to accept the plea was the reason for the need for substitute counsel; moreover, during the time Erickson was representing both defendant and the state's attorney who was prosecuting her, he secured a jury waiver from defendant, signed February 5, 2013, but not filed until May 2, 2013, which new counsel sought to withdraw. Did this mean Erickson was only willing to represent defendant as long as she entered a plea of guilty

as opposed to proceeding to trial? Further questions arise from the fact that the record also reveals, after Erickson was substituted out as defendant's counsel, Scott, still represented by Erickson, reassumed primary responsibility for preparing and trying the State's case against her. This would mean defendant's former attorney was still representing the prosecutor who was trying the case against her. There may be perfectly reasonable explanations for these questions, but that is not the issue in first-stage postconviction proceedings. The fact that defendant's counsel was suffering from a *per se* conflict and she can point to these things in the record should be enough. Simply put, there is arguable merit to defendant's claim that Erickson labored under a *per se* conflict of interest and, therefore, rendered her ineffective of assistance of counsel.

¶ 21          "A criminal defendant's sixth amendment right to the effective assistance of counsel includes the right to conflict-free representation." *People v. Peterson*, 2017 IL 120331, ¶ 102, 106 N.E.3d 944. Indeed, "[w]hen a defendant's attorney has a tie to a person or entity that would benefit from an unfavorable verdict for the defendant, a *per se* conflict arises." *Hernandez*, 231 Ill. 2d 142 (citing *People v. Janes*, 168 Ill. 2d 382, 387, 660 N.E.2d 980, 983 (1995)). Our supreme court recently reaffirmed the three circumstances where a *per se* conflict of interest will be found to exist: " '(1) where defense counsel has a prior or contemporaneous association with the victim, *the prosecution*, or an entity assisting the prosecution; (2) where defense counsel contemporaneously represents a prosecution witness; and (3) where defense counsel was a former prosecutor who had been personally involved with the prosecution of defendant.' " (Emphasis added.) *People v. Green*, 2020 IL 125005, ¶ 43 (quoting *People v. Fields*, 2012 IL 112438, ¶ 18, 980 N.E.2d 35). If there is a *per se* conflict, "a defendant need not show that the conflict affected the attorney's actual performance," and unless the defendant

waives the conflict, it is automatic grounds for reversal. *Fields*, 2012 IL 112438, ¶ 18. On the surface, the petition's allegation that Erickson concurrently represented defendant and the state's attorney involved in prosecuting her for murder constitutes a *per se* conflict—a meritorious legal theory.

¶ 22        Though defendant's postconviction petition acknowledged she signed an undated "Waiver of Conflict"—which first appears in the record attached to the "State's Answer to Defendant's Motion to Disqualify Counsel"—she also claimed she did not understand what she was doing when she signed it. The State argues defendant's waiver nullifies her ineffective assistance of counsel claim and, therefore, renders the petition frivolous and patently without merit. We disagree.

¶ 23        Reviewing courts "indulge every reasonable presumption against defendant's waiver." *People v. Acevedo*, 2018 IL App (2d) 160562, ¶ 18, 121 N.E.3d 530. So "[t]o be valid, a defendant's waiver of a conflict must be knowing," meaning the defendant must be " 'admonished as to the existence of the conflict *and its significance*.' " (Emphasis in original.) *Acevedo*, 2018 IL App (2d) 160562, ¶ 18 (quoting *People v. Olinger*, 112 Ill. 2d 324, 339, 493 N.E.2d 579, 587 (1986)). Although there is no talismanic admonishment courts are required to give, "[a] defendant must actually understand how the conflict could affect [the] attorney's representation, before [the] right to a conflict-free attorney can be knowingly waived." *People v. Coleman*, 301 Ill. App. 3d 290, 301, 703 N.E.2d 137, 145 (1998). Courts of review are to err on the side of caution, looking at every reasonable presumption against waiver of constitutional rights and not presuming acquiescence. See *People v. Stoval*, 40 Ill. 2d 109, 114, 239 N.E.2d 441, 444 (1968); see also *People v. Poole*, 2015 IL App (4th) 130847, ¶ 34, 39 N.E.3d 1086. "In determining whether there has been an intelligent waiver of the defendant's right to conflict-free

counsel, the circumstances surrounding the claimed waiver must be considered." *Poole*, 2015 IL App (4th) 130847, ¶ 34. In fact, the supreme court sought to emphasize the rationale used when assessing whether advice to the defendant executing a waiver was sufficient in *Stoval* when they said, "[t]he difficulty in appropriately advising an accused of this right [to conflict-free counsel] almost directs that counsel, especially one appointed, be free from any such conflict." *Stoval*, 40 Ill. 2d at 114.

¶ 24        At this stage of postconviction proceedings, we take defendant's allegation she did not knowingly waive conflict-free representation as true and note the record does not completely contradict it. Other than the waiver form—which provides no explanation of its effect and no indication on its face defendant knew its significance—we found no evidence supporting a knowing waiver here. We found nothing suggesting the trial court or counsel admonished defendant on her right to conflict-free counsel and the implications of waiving that right, or that it was ever addressed in open court. All this is to say, the record does not contradict defendant's claim she did not knowingly waive her sixth amendment right to conflict-free representation from Erickson. Defendant's claims may prove untrue, but that is not the issue at this stage of postconviction proceedings. Consequently, her ineffective assistance of counsel claim due to a *per se* conflict of interest remains a viable legal theory. See *Hodges*, 234 Ill. 2d at 16-17.

¶ 25        The instant petition alleged ineffective assistance of counsel due to a *per se* conflict of interest where the same attorney simultaneously represented defendant and the state's attorney in separate matters. Taking all the petition's facts as true and liberally construing them, we conclude the petition's allegations have arguable bases in law and fact because they are not based on fanciful facts or an indisputably meritless legal theory. See *Hodges*, 234 Ill. 2d at 16-17. The petition, therefore, by definition, was neither frivolous nor patently without merit,

and the trial court erred in summarily dismissing it. See *Hodges*, 234 Ill. 2d 16-17; 725 ILCS 5/122-2.1(a)(2) (West 2016). We reverse the court's decision and remand this matter with instructions to move the petition to second-stage postconviction proceedings and appoint defendant counsel, if requested. See 725 ILCS 5/122-2.1(b), 122-4 (West 2016). Because defendant should (with the benefit of appointed counsel) be allowed to amend her *pro se* petition, where she may raise the argument she received an unconstitutional sentence under section 122-4 (725 ILCS 5/122-4 (West 2016)), we need not consider that argument here.

¶ 26                                    III. CONCLUSION

¶ 27            For the reasons stated, we reverse the trial court's judgment.

¶ 28            Reversed and remanded with instructions.